**Richard FUGARINO, Jo Marie Fugarino and Marc A. Fugarino, Plaintiffs–Appellants,**

**v.**

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY and Consolidated Group, Inc., Defendants–Appellees.**

**No. 91–3652.**

United States Court of Appeals, Sixth Circuit.

Argued June 9, 1992.

Decided July 8, 1992.

Rehearing and Rehearing En Banc Denied Aug. 24, 1992.

Walter R. Lawrence (argued and briefed), Tallmadge, Ohio, for plaintiffs-appellants.

Lisa M. Newmark, Eliott R. Good (briefed), Philip F. Brown (argued), Chorpenning, Good & Mancuso, Columbus, Ohio, for defendant-appellee.

Before: MARTIN and MILBURN, Circuit Judges; and BROWN, Senior Circuit Judge.

MILBURN, Circuit Judge.

Plaintiffs Richard Fugarino, Jo Marie Fugarino, and Marc A. Fugarino appeal the district court's dismissal of their complaint,

which asserted various state law causes of action relating to an insurance policy purchased from defendant Hartford Life and Accident Insurance Company. The dismissal was under Federal Rule of Civil Procedure 12(b)(6) and based on the ground of preemption pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. On appeal, the principal issues presented are: (1) whether the insurance plan in question is an employee welfare benefit plan as defined by ERISA, (2) whether the status of plaintiff Richard Fugarino as a self-employed sole proprietor affects the status of the insurance plan pursuant to ERISA, (3) whether the district court erred in dismissing the complaint pursuant to Rule 12(b)(6), and (4) whether the district court's Rule 12(b)(6) dismissal is a grant of summary judgment pursuant to Federal Rule of Civil Procedure 52 because the court considered matters outside the pleadings when deciding the motion for dismissal. For the reasons that follow, we affirm in part, reverse in part, and remand.

## I.

### A.

This case involves a dispute between the plaintiffs and defendants concerning an insurance policy. The policy is a Group Health Insurance Policy which, as stated, was purchased by plaintiff Richard Fugarino from defendant Hartford Life and Accident Insurance Company. The policy is administered by defendant Consolidated Group Inc.

Plaintiff Richard Fugarino purchased the policy to provide health and medical coverage for himself, his dependents, and for a few of his employees and their dependents. Plaintiff Richard Fugarino is the sole proprietor and operator of a business known as "The Glens Restaurant." Full-time and part-time employees work at the restaurant.

The insurance policy was purchased in November of 1985. Since the policy was purchased, three of Richard Fugarino's restaurant employees have been covered under the policy. Richard Fugarino advised his employees of the insurance program, and they then decided whether or not they wanted to participate in the coverage. The employees who participated in the coverage paid their own premiums by reimbursing Fugarino. However, Fugarino paid for the coverage of one of his employees, and he paid for coverage for his dependents, plaintiff Jo Marie Fugarino, his wife, and plaintiff Marc A. Fugarino, his minor son. The insurance contract was cancelled in June 1989.

On or about February 1, 1988, plaintiff Marc A. Fugarino was involved in an automobile accident. Marc A. Fugarino, who was 17 years of age at the time of the accident, sustained severe injuries which left him a paraplegic. Plaintiffs submitted a claim to defendants for payment of Marc A. Fugarino's expenses arising out of the automobile accident; however, a dispute arose between the parties concerning payment of the expenses.

### B.

On February 10, 1989, plaintiffs brought an action against defendants in the Court of Common Pleas of Summit County, Ohio. Plaintiffs' complaint contained four separate counts. Count One sought judgment against defendants for the amount of Marc A. Fugarino's unpaid medical bills arising out of the automobile accident. Count Two sought judgment for unpaid medical bills incurred by some of plaintiff Richard Fugarino's employees. Counts One and Two were subsequently dismissed by agreement of the parties on November 2, 1989, after a settlement was reached by the parties and as well by the plaintiffs in behalf of the restaurant employees.[1]

Count Three of the complaint sought compensatory and punitive damages for alleged bad faith by defendants in their han-

---

[1] At oral argument, counsel for the defendants conceded that the settlement did not cover future medical expenses incurred in behalf of Marc A. Fugarino as a result of his automobile accident on February 1, 1988.

dling of the claims submitted by plaintiffs on their own behalf and on behalf of the restaurant employees. Count Four sought a declaratory judgment that the insurance contract was in full force and effect and that defendants were responsible for payment of all past and future medical bills incurred by plaintiffs which were covered under defendant Hartford's insurance policy.

On March 20, 1989, defendants removed plaintiffs' case to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. §§ 1441 and 1446. Thereafter, on April 27, 1989, defendants filed a motion to dismiss the complaint on the ground that plaintiffs' claims arose under Ohio law and, thus, were preempted by ERISA. Defendants further asserted that plaintiffs failed to abide by the administrative remedies provided by ERISA and the insurance policy in question and, therefore, that the action was filed prematurely.

Plaintiffs filed a motion in opposition to defendants' motion to dismiss. In their motion, plaintiffs requested that the case be remanded back to state court pursuant to 28 U.S.C. § 1447(c). On June 4, 1991, the district court dismissed plaintiffs' complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. This timely appeal followed.

## II.

### A.

Plaintiffs first challenge the dismissal of their complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). They argue that because the district court considered matters beyond the pleadings in granting the dismissal that the dismissal is in effect a grant of summary judgment under Federal Rule of Civil Procedure 56. Second, plaintiffs also argue that the district court erred when it failed to give them ten days notice of its intent to grant summary judgment in favor of defendants.

■ From the record, it appears that the district court did consider matters outside the pleadings in dismissing this case. When matters outside the pleadings are presented to and considered by the court in a Rule 12(b)(6) motion, the motion is treated as a motion for summary judgment. *See Friedman v. United States,* 927 F.2d 259, 261 (6th Cir.1991). When matters outside the pleadings are considered in ruling on a Rule 12(b)(6) motion, the parties must be given a reasonable opportunity to present all material made pertinent to the motion under Rule 56. *Id.*

■ Plaintiffs essentially argue that because they were not given explicit notice that the district court would rely on matters outside the pleadings, they were not given a reasonable opportunity to respond to such matters. However, the record belies such assertion. In this case, plaintiffs had ample opportunity to respond to defendants' evidence.

Defendants filed their motion to dismiss on April 27, 1989. They filed an additional memorandum with exhibits in September 1989 and an additional supplemental memorandum with exhibits in November 1989. The district court did not act on defendants' motion until June 4, 1991, when it dismissed the case. Thus, although plaintiffs did not receive explicit notice that the district court would consider matters outside the pleadings, they had approximately two years to respond to defendants' evidence.

In *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389 (6th Cir.1975), we addressed circumstances comparable to the facts in this case. In *Dayco,* the district court granted summary judgment in favor of the defendant. The plaintiff appealed, arguing that the district court should have given the parties ten days notice before he considered the defendant's Rule 12(b)(6) motion as a motion for summary judgment. The plaintiff argued that it did not have ample time to supplement the record. *Id.* at 392. However, the record revealed that seven weeks elapsed between the service of the Rule 12(b)(6) motion and the entry of judgment. We held that although it would have been a better practice for the district court to give notice of its intention to treat a Rule 12(b)(6) motion as a summary judgment motion, no error was committed un-

der the circumstances present in *Dayco*. *Id.*

In this case, plaintiffs responded to each of defendants' motions or memoranda. Furthermore, given the amount of time which elapsed between the filing of defendants' Rule 12(b)(6) motion and the dismissal of plaintiffs' case, it can hardly be said that plaintiffs did not have a reasonable time to respond to defendants' evidence. Thus, the district court did not commit error in failing to give notice to the parties that it would consider matters outside the pleadings in dismissing this case.

### B.

As noted above, the district court's dismissal of this case is properly treated as a grant of summary judgment in favor of defendants. This court reviews a district court's grant of summary judgment de novo. *See Faughender v. City of North Olmsted, Ohio*, 927 F.2d 909, 911 (6th Cir. 1991). Summary judgment is proper pursuant to Federal Rule of Civil Procedure 56(c) if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988).

### C.

■ Plaintiffs argue that the district court erred in concluding that the group insurance policy purchased by plaintiff Richard Fugarino constituted an ERISA plan. ERISA applies to an employee benefits plan if it is established or maintained by an employer or an employee organization engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a); *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir.1990).

■ Plaintiffs initially argue that ERISA cannot apply in this case because the restaurant operated by Richard Fugarino is not an industry or activity affecting commerce. However, plaintiffs' assertion was effectively answered by the Supreme Court

in *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). In *Katzenbach*, the Supreme Court held that although a single, family-owned restaurant located in Birmingham, Alabama, had a trivial relation to interstate commerce, that was not enough to remove it from federal regulation. *Id.*, 379 U.S. at 300–01, 85 S.Ct. at 382. Similarly, in this case, the restaurant may have a trivial or limited connection or impact upon commerce, but that is not enough to exempt it from regulation under ERISA.

### D.

■ Plaintiffs next argue that the mere purchase of the group health insurance policy by plaintiff Richard Fugarino was insufficient to establish an ERISA plan. Title I of ERISA applies to "any employee benefit plan." 29 U.S.C. § 1003(a). An employee benefit plan is defined as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both...." 29 U.S.C. § 1002(3). ERISA describes an "employee welfare benefit plan" as

> any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1). Thus, by its express terms, ERISA encompasses welfare plans provided through the purchase of insurance. *See Memorial Hosp.*, 904 F.2d at 240. Moreover, it is a common practice for employers to provide health care benefits to their employees through the purchase of a group health insurance policy from a commercial insurance company. *Id.* (citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 727, 105 S.Ct. 2380, 2383, 85 L.Ed.2d 728 (1985)).

However, the United States Department of Labor, pursuant to authority granted to it by Congress, has promulgated regulations providing that certain insurance and other benefit plans are excluded from ERISA's coverage. The Department of Labor regulations provide that the term "employee welfare benefit plan"

> shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j) (1987). Group health insurance plans which meet each of these criteria are excluded from ERISA coverage. *See Hansen v. Continental Ins. Co.*, 940 F.2d 971, 977 (5th Cir.1991). Moreover, the bare purchase of insurance, without any of the above elements present, does not constitute an ERISA plan, although it may be evidence of the existence of an ERISA plan. *See Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir.1988) (per curiam), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1375 (11th Cir. 1982) (en banc)). An employer has not established an ERISA plan if he merely advertises a group insurance plan that has none of the attributes described in 29

C.F.R. § 2510.3–1(j). *Kanne*, 867 F.2d at 492.

In this case, the Department of Labor regulations do not exclude plaintiffs from ERISA's coverage. Fugarino has done far more than purchase a group health insurance policy and advise his employees of its availability. Fugarino pays the premiums for his employees and permits them to reimburse him. Moreover, the record shows that Fugarino pays the health insurance premium for at least one of his employees.

### E.

Relying on the case of *Taggart Corp. v. Life and Health Benefits Admin., Inc.*, 617 F.2d 1208 (5th Cir.1980), *cert. denied*, 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981), plaintiffs argue that the group health insurance policy in this case does not constitute an ERISA plan. *Taggart*, however, dealt with a multiple employers trust ("MET") which provided group insurance to employers too small to qualify for group rates on their own. The MET in *Taggart* pooled the premiums for a group of small employers and purchased a group policy for the group. The Fifth Circuit in *Taggart* concluded that the MET was not a statutory employer of an employee organization and, thus, was not within the scope of ERISA coverage. *Id.* at 1210. The court also held that ERISA did not apply to the purchased health insurance where the purchasing employer neither directly nor indirectly owns, controls, administers, or assumes responsibility for the policy or its benefits. *Id.* at 1211.

Subsequent to the Fifth Circuit's decision in *Taggart*, the Eleventh Circuit decided *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982), in which it rejected the Fifth Circuit's reasoning in *Taggart*. In *Donovan* the Eleventh Circuit found that there were five prerequisites to an ERISA employee welfare plan:

> (1) a "plan, fund, or program" (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment

or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

*Donovan,* 688 F.2d at 1371. In *Donovan,* the Eleventh Circuit stated that the gist of ERISA's definitions of the terms employer, employee organization, participant, and beneficiary is that a plan, fund, or program falls within the ambit of ERISA only if such plan, fund, or program covers ERISA participants because of their employee status in an employment relationship, and an employer or employee organization is the person that establishes or maintains the plan, fund, or program. *Id.;* 29 C.F.R. § 2510.3–3(b), (c).

The *Donovan* court further stated that at minimum a plan, fund, or program under ERISA implies the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits. *Donovan,* 688 F.2d at 1372. Moreover, ERISA does not require a formal, written plan. Rather, ERISA reaches any employee benefit plan if it is established or maintained by an employer or an employee organization, or both, who are engaged in any activities or industry affecting commerce. *Id.* To determine if a plan, fund, or program is a reality, a court must determine whether, from the surrounding circumstances, a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. *Id.* at 1373.

Thus, the Eleventh Circuit stated that it agreed with *Taggart* to the extent that it held that ERISA does not regulate purchases of health insurance where there is no welfare plan. However, the Eleventh Circuit stated that it disagreed with *Taggart* to the extent that the holding in that case implied that an employer or employee organization that only purchases a group health insurance policy or subscribes to a MET to provide health insurance to its employees or members cannot establish or maintain an employee welfare benefit plan

through the purchase of such group health insurance. *Id.* at 1375.

Recently, this court has adopted the reasoning of the Eleventh Circuit in *Donovan. See International Resources, Inc. v. New York Life Ins. Co.,* 950 F.2d 294, 297 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992). Thus, the mere fact that plaintiff Richard Fugarino purchased group health insurance from a MET does not preclude ERISA coverage. Moreover, applying the remainder of the *Donovan* analysis to this case, an ERISA plan does exist. From the surrounding circumstances of this case, a reasonable person can ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. Further, it is clear from the record that plaintiff Richard Fugarino, an employer, has established and maintained a plan, fund, or program for the purpose of providing health benefits to his employees as participants or beneficiaries of the plan. Therefore, ERISA regulation applies to this case.

### F.

Finally, plaintiffs argue that because plaintiff Richard Fugarino is the sole proprietor of a business, the group health insurance he purchased cannot be an ERISA plan. Pursuant to Title I of ERISA,

> ... the term "employee benefit plan" shall not include any plan, fund or program, ... under which no employees are participants covered under the plan....

29 C.F.R. § 2510.3–3(b) (1990). The regulations further provide that

> ... [a]n individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse....

29 C.F.R. § 2510.3–3(c)(1) (1988). As a result of these regulations, a plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA. *See Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 264 (9th Cir.1991). Further, an

employer cannot ordinarily be an employee or participant under ERISA. A fundamental requirement of ERISA is that "the assets of a plan shall never inure to the benefit of any employer ..." 29 U.S.C. § 1103(c)(1). Only "participants" and "beneficiaries" as defined by ERISA have standing to recover benefits under ERISA. 29 U.S.C. § 1132(a)(1). Under ERISA "participant" means

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan....

29 U.S.C. § 1002(7). ERISA defines a "beneficiary" as

> a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

29 U.S.C. § 1002(8). An "employee" and "employer" are plainly meant to be separate entities under ERISA. See Kwatcher v. Mass. Service Emp. Pension Fund, 879 F.2d 957, 959 (1st Cir.1989). Thus, a sole proprietor or sole shareholder of a business must be considered an employer and not an employee of the business for purposes of ERISA. See Kwatcher, 879 F.2d at 959–60; Giordano v. Jones, 867 F.2d 409, 411–12 (7th Cir.1989).

■ Therefore, neither Richard Fugarino nor his spouse, Jo Marie Fugarino, can qualify as participants in an ERISA plan since Richard Fugarino is the sole proprietor of The Glens Restaurant. Moreover, because their son, Marc A. Fugarino, was covered under the policy based upon his status as their dependent and not as an employee of the restaurant, he is also not a participant or beneficiary under the ERISA plan. Since Richard, Jo Marie, and Marc A. Fugarino are not ERISA participants, the group health insurance policy in this case constitutes an insurance contract governed by state law as to the three of them. In order for an individual to bring an action to recover benefits owed under an ERISA plan, the individual must be a "participant" or "beneficiary" of the plan; if the plaintiff

is not a "participant" or "beneficiary," he may sue under and seek the broader relief provided by state tort law. See Dodd v. John Hancock Mut. Life Ins. Co., 688 F.Supp. 564, 568 (E.D.Cal.1988). However, ERISA regulation applies to the employees of The Glens Restaurant who participate in the group health insurance coverage.

### G.

■ Under Ohio law, claims for bad faith dealing in insurance are separate causes of action in tort. See Hoskins v. Aetna Life Ins. Co., 6 Ohio St.3d 272, 452 N.E.2d 1315, 1319 (1983). In this case, plaintiffs have asserted two distinct claims for bad faith dealing—one involving claims for medical expenses for Marc A. Fugarino and one involving claims for medical expenses for certain employees of The Glens Restaurant. Moreover, although plaintiffs settled their claims under Counts One and Two of the complaint, except for Marc A. Fugarino's future medical expenses, they have sought both compensatory and punitive damages under their tort claim in Count Three of their complaint. See, e.g., AmeriTrust Co. Nat. Ass'n v. West American Ins. Co., 37 Ohio App.3d 182, 525 N.E.2d 491, 496 (1987). Thus, plaintiffs' tort claims survive.

■ Since Marc A. Fugarino is not a participant or beneficiary of the ERISA plan, the claim for bad faith dealing concerning his medical expenses is the subject of Ohio law. Therefore, the district court erred in granting summary judgment for defendants on plaintiffs' claims for bad faith and punitive damages with regard to Marc A. Fugarino under Count Three of their complaint and in not granting plaintiffs' motion for remand of their claims to state court.

■ With regard to the claims of bad faith dealing and punitive damages concerning the medical expenses of the employees of The Glens Restaurant, the employees are participants and beneficiaries of an ERISA plan. State common law tort claims, such as the employees' claims, are the subject of ERISA preemption. See Pi-

lot *Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Therefore, the district court properly granted summary judgment in favor of defendants on these claims.

Plaintiffs' final claim, set forth in Count Four of their complaint, seeks a declaratory judgment that the insurance contract in issue in this case is in full force and effect and that defendants were responsible for payment of all past, present, and *future* medical bills incurred by plaintiffs covered under the insurance contract. As earlier stated, the parties entered into a settlement of Counts One and Two of their complaint, which involved claims for nonpayment of benefits under the insurance contract, but reserved their claim for Marc A. Fugarino's future medical expenses. Therefore, the district court erred in granting summary judgment for defendants with regard to plaintiffs' claim for declaratory relief. However, the employees' claim for declaratory relief under Count IV of the complaint is moot.

### III.

For the reasons stated, the district court's grant of summary judgment is AFFIRMED with regard to the claims of the employees of The Glens Restaurant for compensatory and punitive damages for bad faith dealing and with regard to Count Four of plaintiffs' complaint. The district court's grant of summary judgment involving plaintiffs' claim for declaratory relief as to Marc A. Fugarino's future medical expenses and their claims for compensatory and punitive damages for bad faith dealing with regard to Marc A. Fugarino is REVERSED and REMANDED to the district court with instructions to remand those claims to state court.