Jess Michael McFARLAND, Plaintiff,

v.

UNION CENTRAL LIFE INSURANCE COMPANY, Defendants.

No. 3:95–CV–0122.

United States District Court, E.D. Tennessee, Northern Division.

Oct. 12, 1995.

James S. MacDonald, Dunn, MacDonald & Coleman, P.C. Knoxville, TN, for Plaintiff.

Rebecca Brake Murray, Kennerly, Montgomery & Finley, P.C., Knoxville, TN, for Defendant.

## MEMORANDUM OPINION

JORDAN, District Judge.

This civil action is before the court for consideration of the defendant's motion for summary judgment [doc. 10], and the plaintiff's motion to dismiss [doc. 17], which should more properly be considered as a motion to remand under 28 U.S.C. § 1447(c).

The court has considered the exhibits submitted by the defendant in support of its motion for summary judgment, as well as the affidavit, attached to the motion, of Kim

Sterwerf, a senior examiner in the defendant's group service and claims division. The court has also considered the defendant's brief [doc. 11] filed in support of its motion.

The court has also considered the plaintiff's response [doc. 16] to the motion for summary judgment, to which are attached an affidavit made by Charles D. Hamilton, the president of Tennessee Valley Marketing, Inc., the plaintiff's decedent's employer, and an affidavit, with exhibits attached, made by counsel for the plaintiff. In addition, the court has considered Mr. Hamilton's other affidavit, with an exhibit attached, submitted with the plaintiff's motion to dismiss, and the plaintiff's brief [doc. 18] in support of his motion to dismiss and in opposition to the defendant's motion for summary judgment.

In its agreed order filed on September 18, 1995 [doc. 22], the court allowed the defendant until October 13, 1995, to respond to the plaintiff's motion to dismiss and to reply to the response to the motion for summary judgment. The defendant has now filed its reply [doc. 28] to the response to the motion for summary judgment, and its response [doc. 30] to the plaintiff's motion to dismiss, and the court is prepared to rule on the issues presented. The court finds that oral argument would not assist it in deciding these issues.

In the pretrial order prepared by counsel[1] [doc. 24], the parties stipulate that the plaintiff is the son of James Michael McFarland, who is now deceased; that the late Mr. McFarland was an employee of Tennessee Valley Marketing on the date of his death, January 28, 1994; that Tennessee Valley Marketing was on January 28, 1994, a member of the National Food Brokers Insurance Program; and that the defendant issued a policy effective November 1, 1993, to the Trustees of the National Food Brokers Association Member Group Insurance Trust Fund. While not stipulated, there is no dispute in this civil action that this policy was in

---

1. It is a pleasure for the court to work with counsel who have the competence and professionalism displayed in this litigation.

force and effect on the date of the senior Mr. McFarland's death, January 28, 1994.

The policy in issue (ex. 1 to the affidavit of Kim Sterwerf) provides group employee term life insurance, group employee accidental death and dismemberment benefits, and group dependent term life insurance, for active, full-time and retired employees of employers that are members of the National Food Brokers Association. The term "retired employee" is defined in part to mean an employee who was formerly an active, full-time employee of a covered employer, and who is covered by his or her employer's pension or retirement plan. There is a policy requirement that an employee, to be considered a full-time employee, be scheduled to work for his or her employer at least 30 hours each week.

Covered employees were given copies of a certificate concerning the coverage provided by this group insurance policy.[2] The policy itself states, "The certificate will not alter the liability of the Insurer as stated in the Policy." On the first or cover page of the certificate, it is stated that the certificate is not part of the contract, and "does not change or extend the Insurer's liability under the Policy. All coverage described by this certificate is subject to the terms of the Policy."

The certificate includes, under the heading **"INFORMATION REGARDING THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974,"** and the subheading **"Appeal of Claim Denial,"** a provision for an appeal to the defendant from a decision denying a claim. Another provision in this section of the certificate states, "An appeal by the Insured or Beneficiary must be made within 60 days of the date the claim denial letter is received from the Insurer."

Also in this certificate, on the same page under the heading which refers to the Employee Retirement Income Security Act of 1974 (ERISA), is a provision which constitutes the person or entity administering the plan provisions of the Policy a fiduciary, with "full and complete authority, responsibility, discretion, and control over plan administra-

tion." This discretionary authority is stated to include authority to construe and interpret plan provisions, to determine all questions of eligibility for plan participation and for payment of benefits, and to "do all other acts which are reasonably required to administer the plan in accordance with its provisions, or which are required by law."

James Michael McFarland died in an automobile accident on January 28, 1994. His son, the plaintiff, made a timely claim for life insurance proceeds and accidental death benefits under the group policy in issue. On the claim form entitled **"DEATH CLAIM CERTIFICATION BY ADMINISTRATOR AND EMPLOYER,"** Mr. Hamilton, the president of the decedent's employer, Tennessee Valley Marketing, reported that the decedent was at the time of his death a part-time employee of Tennessee Valley Marketing, working an average of 20 hours per week. Mr. Hamilton signed two certifications stating this, one dated June 28, 1994, and one dated August 16, 1994. On the June 28, 1994, one, Mr. Hamilton also signed in a space provided directly beneath this statement. On both of these forms, Mr. Hamilton signed beneath a printed employer's certification at the bottoms of the forms, which printed material includes a certification that the deceased was eligible as a member of the group, that he was properly enrolled in the plan, and that he, "unless retired, was considered to be an active full-time employee at the time of death."

By a letter dated November 14, 1994, and sent to the plaintiff's counsel, the defendant denied the plaintiff's claim. The defendant stated in this letter its reliance on group policy provisions and on facts in the claim record, including that the decedent was working an average of 20 hours per week at the time of his death, in deciding that at the time of his death, James Michael McFarland was neither an active, full-time employee nor a retired employee. The defendant indicated its intention to refund to Tennessee Valley Marketing all premiums paid for coverage for the late Mr. McFarland under the group policy.

---

2. However, it appears from the uncontroverted affidavit testimony of Mr. Hamilton that copies of the certificate were not delivered to Tennessee

Valley Marketing for distribution to employees until April 20, 1994, after Mr. McFarland's death.

This November 14, 1994, letter included the following statements:

> The beneficiary, or his duly authorized representative, may within sixty (60) days from the date of this letter, appeal this denial by direct written application to the Company requesting a review of the claim.
>
>     \*      \*      \*
>
> This statement of declination is not to be construed to preclude any defenses to this claim not expressly indicated herein and the Company reserves the right to use any and all such defenses.

There is no evidence that the plaintiff pursued an appeal to the defendant within this 60–day deadline.

The court should consider first the plaintiff's motion to dismiss, because it goes to the court's jurisdiction of this removed civil action. The plaintiff argues that there is not jurisdiction of this civil action under 28 U.S.C. § 1331[3], because the group insurance policy is not an employee welfare benefit plan governed by ERISA.

With exceptions not applicable here, subchapter I of ERISA as amended and codified, 29 U.S.C. §§ 1001, *et seq.*, applies to any employee benefit plan established or maintained by any employer engaged in commerce or in any industry or activity affecting commerce.[4] 29 U.S.C. § 1003(a)(1).

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... benefits in the event of ... accident, disability, [or] death....

29 U.S.C. § 1002(1). "The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). With exceptions not applicable in this case, the term "multiple employer welfare arrangement"

> means an employee welfare benefit plan, or any other arrangement (other than an employee welfare benefit plan), which is established or maintained for the purpose of offering or providing any benefit described in [the statutory definition of "employee welfare benefit plan" and "welfare plan"] to the employees of two or more employers (including one or more self-employed individuals), or to their beneficiaries....

29 U.S.C. § 1002(40)(A).

ERISA mandates that an employee covered by an employee welfare benefit plan be provided a summary plan description (SPD) which sets out "in a manner calculated to be understood by the average plan participant" certain information about the plan. 29 U.S.C. § 1022(a)(1). The SPD must include

> the plan's requirements respecting eligibility for participation and benefits; ... circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; ... [and] the procedures to be followed in presenting claims for benefits under the plan and the remedies available under the plan for the redress of claims which are denied in whole or in part....

29 U.S.C. § 1022(b). A copy of the SPD must be delivered to each participant within 90 days after he or she becomes a participant. 29 U.S.C. § 1024(b)(1)(A).

An employee benefit plan governed by ERISA must, in accordance with regulations promulgated by the Secretary of Labor, provide adequate, written notice of a denial of a claim made under the plan, "setting forth the specific reasons for such denial, written in a manner calculated to be understood by the

---

**3.** Federal-question jurisdiction is the only ground of jurisdiction on which the defendant relied in removing this civil action to this court, and no other ground has been shown.

**4.** "The term 'commerce' means trade, traffic, commerce, transportation, or communication be-

tween any State and any place outside thereof." 29 U.S.C. § 1002(11). The plaintiff in this civil action has not suggested that Tennessee Valley Marketing is neither engaged in commerce nor engaged in any industry or activity affecting commerce.

participant," and must afford to the participant whose claim has been denied "a reasonable opportunity ... for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.

These and the other provisions of subchapter I of ERISA as amended and codified "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" established or maintained by any employer engaged in commerce or in any industry affecting commerce, and not exempted from statutory coverage by ERISA itself. 29 U.S.C. § 1144(a). However, nothing in subchapter I is to be "construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The drafters of the statute were careful to provide that neither an employee benefit plan governed by ERISA, nor a trust established under such an employee benefit plan, "shall be deemed to be an insurance company or other insurer, ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies, [or] insurance contracts...." 29 U.S.C. § 1144(b)(2)(B).

A fully insured multiple employer welfare arrangement is subject to any State law regulating insurance to the extent not inconsistent with subchapter I, and to the extent that the State law provides standards (and provisions to enforce these standards) which the arrangement must meet in order to be considered under the State law able to pay benefits in full when due. 29 U.S.C. § 1144(b)(6)(A)(i). A multiple employer welfare arrangement which is not fully insured (and which the Secretary of Labor has not exempted by treating it as if it were fully insured) is subject to any State law regulating insurance to the extent not inconsistent

with subchapter I. 29 U.S.C. § 1144(b)(6)(A)(ii).

■ However, these provisions for greater State-law control of multiple employer welfare arrangements do not apply "to an employee welfare benefit plan which is not a multiple employer welfare arrangement and which is a plan, fund, or program participating in, subscribing to, or otherwise using a multiple employer welfare arrangement to fund or administer benefits to such plan's participants and beneficiaries." 29 U.S.C. § 1144(b)(6)(C). *See also* 29 U.S.C. § 1060(a). This distinction applies precisely to the situation presented here, in which the employer, Tennessee Valley Marketing, established an employee welfare benefit plan by obtaining coverage for its employees under a group insurance policy issued to a trade group in which this employer participated.[5] The arrangement between the defendant insurer and the trustees of the National Food Brokers Association Member Group Insurance Trust Fund might be subject to State law to some extent, such as State law requiring life insurers to establish reserves at certain levels, but the relationship with which this court must be concerned in this civil action is that between Tennessee Valley Marketing and its former employee, the late Mr. McFarland.

The plaintiff argues that Tennessee Valley Marketing's purchase of coverage under the group insurance policy for the late Mr. McFarland and other of its employees did not create an employee welfare benefit plan governed by ERISA. Mr. Hamilton, the president of Tennessee Valley Marketing, who is obviously supportive of the plaintiff's claim in this civil action, states in his second affidavit, which is attached to the plaintiff's motion to dismiss, that the National Food Brokers Association is a multi-employer trade organization which offers various bene-

---

5. The National Food Brokers Association has no doubt that the group insurance offered to participating member employers constitutes an employee benefit plan. As the affidavit of Joseph W. Smolskis, the association's vice president of finance and administration, submitted with the defendant's response [doc. 30] to the plaintiff's motion to dismiss shows, this group insurance plan has been qualified by the Internal Revenue

Service (IRS) as an employee benefit plan. National Food Brokers Association Members Group Insurance Trust, as the plan sponsor, files the requisite annual return/report on form 5500 with the IRS and the Department of Labor. In its financial statements, the National Food Brokers Association Life Insurance Trust is stated to serve as a "group insurance arrangement" under ERISA.

fits to its constituent members; that Tennessee Valley Marketing was a constituent member of this association at all pertinent times; and that Tennessee Valley Marketing played no part in planning, creating, or administering this group insurance policy. This employer did nothing more than pay premiums as they came due, and complete a portion of a claim form submitted to it by International Benefit Services Corporation.[6] Mr. Hamilton states in his affidavit that the first time he or anyone else at Tennessee Valley Marketing was furnished a copy of the certificate of insurance containing the 30–hours–per-week requirement in the definition of "full-time employee" was when International Benefit Services Corporation sent to Tennessee Valley Marketing, as a member of the National Food Brokers Association, an April 20, 1994, letter, enclosing copies of the certificate of insurance for covered employees.

That this group insurance policy constitutes an employee welfare benefit plan governed by ERISA, and that ERISA (and specifically the remedial provision of ERISA codified at 29 U.S.C. § 1132(a)(1)(B)) preempts the plaintiff's State-law claims, are established by the statutory provisions reviewed above, and by ERISA law as announced in *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In *Dedeaux*, the respondent's employer "had ... a long term disability employee benefit plan established *by purchasing a group insurance policy* from petitioner, Pilot Life...." 481 U.S. at 43 (emphasis added). The Supreme Court held specifically that the Mississippi law of bad faith was not State law which regulates insurance, so as to be saved from ERISA pre-emption by 29 U.S.C. § 1144(b)(2)(A).

The plaintiff argues that the recent decision in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Company*, —— U.S. ——, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), which he describes as "pulling back from an unending expansion of federal jurisdiction" [doc. 18 at p. 4], supports his position on this issue. In *New York Blue Cross Plans,* the State law in issue was New York legislation which required hospitals to collect surcharges from patients covered by commercial insurers and from health maintenance organizations (HMOs), but not from any patient insured by a Blue Cross/Blue Shield plan. This differentiation was based on recognition of the fact that the Blue Cross/Blue Shield organizations, because of their open enrollment policy, had provided coverage to many persons which the commercial insurers and HMOs treated as uninsurable or unacceptable. The Supreme Court found it unnecessary to reach the issue under 29 U.S.C. § 1144(b)(1)(2)(A) whether this was a State law which regulated insurance, because the court found that it did not relate to employee benefit plans for the purpose of § 1144(a). The court noted that the New York legislation neither mandated plan benefits nor related to the administration of plans or the enforcement of rights under plans; the legislation, the Supreme Court held, had a merely indirect economic effect on choices made by those in the market for insurance coverage, including ERISA plans.

In *New York Blue Cross Plans,* the Supreme Court expressly reaffirmed prior authority, including *Dedeaux, supra,* holding that ERISA pre-emption is not limited to State laws which regulate employee benefit plans directly. The court reiterated its understanding that the intent of Congress in enacting ERISA was to establish uniform, nationwide rules concerning employee benefits.

*Hansen v. Continental Insurance Company,* 940 F.2d 971 (5th Cir.1991), on which the plaintiff also relies, provides very little assistance to his case. In *Hansen,* the court of appeals held that the group accidental death and dismemberment insurance policy made available to the plaintiff and his co-employees by his employer constituted an ERISA employee welfare benefit plan. The court found that the employer had formed an intent to provide its employees with the benefit of the group insurance policy, and that it had given

---

**6.** It appears that International Benefit Services Corporation functioned as the claims administrator with respect to the employee welfare benefit plans established by employers which were members of the National Food Brokers Insurance Program.

effect to this intent not merely by obtaining the group insurance policy for which the employees paid premiums, but also by assuming some responsibility for claims administration. *See id.* at 975–78.

In the case at bar, while the affidavit testimony of Mr. Hamilton is offered to show that Tennessee Valley Marketing had little or nothing to do with the administration of claims under this group life insurance policy, another fact disclosed by Mr. Hamilton's affidavit in support of the plaintiff's motion to dismiss establishes that this employer had the intent to provide its employees with a welfare benefit: Tennessee Valley Marketing paid the premiums for the life insurance coverage provided by the policy.[7] *Compare International Resources, Inc. v. New York Life Insurance Company,* 950 F.2d 294, 298 (6th Cir.1991), *cert. denied,* 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992) (citation omitted): "International Resources did not merely advertise alternate plans and then refrain from making any contributions on behalf of its employees. Instead, International Resources chose the plan, paid the premiums, and gave this coverage to all its employees as an employee benefit."

■ The fact that Tennessee Valley Marketing carried out its intent by obtaining coverage under a policy issued to its trade organization, rather than purchasing insurance coverage on the open market, reflects an economic decision which does not alter the fact that by purchasing this insurance for its employees, Tennessee Valley Marketing established an employee welfare benefit plan. In *International Resources, supra,* the employer was held to have established a plan by purchasing group medical insurance coverage arranged by a multi-employer trust (MET) in which it participated.

■ The fact that there is no written benefit plan separate from the group insurance policy does not affect the court's holding, because an unwritten policy of providing certain benefits may nevertheless constitute an employee welfare benefit plan governed by ERISA. *Gordon v. Barnes Pumps, Inc.,* 999 F.2d 133, 136 (6th Cir.1993). Authority in this judicial circuit clearly supports finding the existence of an employee welfare benefit plan in this case. *See, e.g., Fugarino v. Hartford Life and Accident Insurance Company,* 969 F.2d 178 (6th Cir.1992), *cert. denied,* 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993); *International Resources, Inc. v. New York Life Insurance Company, supra.*

■ Having decided that ERISA governs the group insurance policy in issue, and therefore governs the issues in this civil action, the court must proceed to consider the defendant's motion for summary judgment. The defendant points out correctly that in its memorandum opinion filed recently in *Andrew Moffitt v. Whittle Communications, L.P., et al.,* 895 F.Supp. 961 (E.D.Tenn.1995) (*per* Jordan, U.S.D.J.), now published at 1995 WL 462004, this court, relying on appellate authority in this judicial circuit, stated some of the rules which govern judicial review of denials of claims for benefits under ERISA employee welfare benefit plans. A court reviewing such a denial of a claim for benefits may consider only the evidence available to the plan administrator at the time when the final decision denying the claim was made. *Miller v. Metropolitan Life Insurance Company,* 925 F.2d 979, 986 (6th Cir.1991).[8] The use of permissive language in a plan or in a SPD concerning administrative review of a benefits claim denial does not make exhaustion of administrative remedies any less of a prerequisite to a 29 U.S.C. § 1132(a)(1)(B) civil action to recover benefits or to enforce rights under an employee benefit plan. *Baxter v. C.A. Muer Corporation,* 941 F.2d 451, 453 (6th Cir.1991). This court also stated in

7. This fact prevents this Tennessee Valley Marketing employee welfare benefit plan from being treated as excluded from the scope of ERISA by the Department of Labor regulation discussed in *Fugarino v. Hartford Life and Accident Insurance Company, infra,* 969 F.2d at 184, and in *Hansen v. Continental Insurance Company, supra,* 940 F.2d at 976–77.

8. "If this were an ERISA case, the plaintiff acknowledges that when reviewing a denial of benefits under an ERISA plan, the Court may consider only the evidence available to the claims administrator at the time the final decision was made." Plaintiff's Memorandum of Law in Support of Motion to Dismiss and in Opposition to Motion for Summary Judgment [doc. 18] at 6.

its opinion in *Moffitt v. Whittle Communications, L.P., supra,* its agreement "with those courts which have held that a claimant's failure to comply with a reasonable time constraint imposed by a plan for administrative review of denial of a claim precludes judicial review of the claim." Mem. op. at 15 (citations omitted).

In testifying by way of affidavit in opposition to the defendant's motion for summary judgment, Mr. Hamilton of Tennessee Valley Marketing refutes his own prior certifications that Mr. McFarland worked an average of 20 hours per week. He states that Mr. McFarland was a self-directed salesman who set his own hours. He states that because one of Mr. McFarland's primary responsibilities was to develop new business, he was often working when he was playing golf, hunting, or fishing.

Mr. Hamilton states in this affidavit that he was never made aware of the requirement that Mr. McFarland had to be scheduled to work at least 30 hours per week to be considered an active, full-time employee. He states that had accurate records been kept, such records might have shown that Mr. McFarland worked at least this many hours per week. Mr. Hamilton points out that International Benefit Services Corporation sent copies of the group insurance certificate for distribution too late for him to ensure that Mr. McFarland was scheduled to work at least 30 hours per week.

Mr. Smolskis, the vice president of the National Food Brokers Association, states in his affidavit that the group life/accidental death and disability plan offered by the association to its member employers has always included this 30–hours–per–week eligibility requirement, even before the defendant became the underwriter of the plan. The group underwriting request made by the association to the defendant in 1993 reflects this, as does printed information concerning the plan sent by the association to its member employers in the fall of 1993, after the defendant became the underwriter. As the court has stated above, the group policy itself, apart from the certificate, states that a full-time employee must be scheduled to work at least 30 hours per week.

In his affidavit, counsel for the plaintiff shows that he corresponded with the defendant's senior examiner who was considering the plaintiff's claim, and that he provided information that Mr. Hamilton's statement that Mr. McFarland worked an average of 20 hours per week was based on "a very rough estimate." Counsel invited the examiner to discuss this with Mr. Hamilton. Counsel stated in his correspondence that no one had ever advised Mr. Hamilton that an adjustment of Mr. McFarland's work schedule might render him ineligible for continued coverage under the group policy.

█ The court finds that the arbitrary and capricious standard of review should be applied to the benefits claim denial in this case. *See Miller v. Metropolitan Life Insurance Company, supra.* As the court has stated above, the certificate of insurance in this case granted discretionary authority to decide questions of eligibility and of the payment of benefits. This provision is not inconsistent with any provision of the policy, which is silent concerning administration of the plan created by the purchase of this insurance.

While copies of the certificate were not delivered for distribution to employees of Tennessee Valley Marketing until after the plaintiff's decedent's death, the multiple employer welfare arrangement established by the issuance of this group insurance policy to the Trustees of the National Food Brokers Association Member Group Insurance Trust Fund came into being at the latest when the National Food Brokers Association accepted the policy on January 5, 1994, with an effective date of November 1, 1993. The group policy itself, as opposed to the certificate, provides that the policyholder, *i.e.,* the trustees, will act for and on behalf of all covered employees with respect to the policy, and that the acts and agreements of the policyholder are binding on the covered employers. Tennessee Valley Marketing, as a participating member of the association, must be held to have had knowledge or notice of the plan provisions before Mr. McFarland's death. This is true not only with respect to the plan's grant of discretion concerning eligibility and claims matters, but also with respect to the 30–hours–per–week eligibility require-

ment, which predates the defendant's underwriting of this plan.

■ The court therefore finds, as a matter of law, that the terms and provisions of the plan govern in this case, and that Tennessee Valley Marketing's failure to be familiar with these terms and provisions does not entitle the plaintiff to any higher level of judicial scrutiny of the benefits claim denial in this case, or to any waiver of the plan requirement that a covered employee be an active, full-time employee as defined in the plan. There is no ground for an estoppel in this case, for the plaintiff has offered no evidence of any representation made by the defendant to the plaintiff, to the plaintiff's decedent, or to the plaintiff's decedent's employer on the basis of which to estop the defendant from relying on the written plan provisions. *Compare Moffitt v. Whittle Communications, L.P., supra.*[9]

■ Having decided on the appropriate standard of review of this benefits claim denial, the court must address the issue whether the denial is subject to reversal under the arbitrary and capricious standard. The court is cognizant that deferential review of an insurer's denial of an ERISA claim must be "shaped" by recognition of the insurer's conflict of interest between its ERISA fiduciary obligations and its business interest in keeping the payment of claims out of its assets to a minimum. *See Miler v. Metropolitan Life Insurance Company, supra,* 925 F.2d at 984.

■ The court finds as a matter of law that the denial of the plaintiff's claim in this case was neither arbitrary nor capricious. The defendant had before it two signed certifications by the plaintiff's decedent's employer that the plaintiff's decedent worked an average of 20 hours per week. The plain language of the group insurance policy rendered the plaintiff's decedent ineligible for coverage on this ground. These reports that Mr. McFarland was a part-time employee are consistent with what Mr. Hamilton states in his first affidavit filed in this civil action, that in 1987, Mr. McFarland merged his food brokerage business with Tennessee Valley Marketing, and that in 1990, he began to reduce his working hours. Mr. Hamilton's refutation of his earlier certifications that Mr. McFarland worked an average of 20 hours per week, coming after the defendant's denial of the plaintiff's claim, seems an understandable attempt to aid the plaintiff, but this affidavit testimony is imprecise concerning the length of Mr. McFarland's average workweek at the time of his death.

The correspondence of counsel for the plaintiff to the defendant's claims examiner is similarly imprecise. Counsel suggested to the claims examiner that she question Mr. Hamilton about the plaintiff's decedent's status as a full-time or part-time employee, but the claims examiner had already received the employer's certifications concerning the average number of hours per week worked by Mr. McFarland, and these certifications were signed by Mr. Hamilton. In such a case, with no existing time records, the defendant was not arbitrary or capricious in declining to speculate that Mr. McFarland worked 30 hours or more per week.

■ Finally, the court holds as a matter of law that this civil action is likewise subject to summary judgment in favor of the defendant because of the plaintiff's failure to exhaust administrative remedies. *See Moffitt v. Whittle Communications, L.P., supra,* and authorities cited therein. While the copies of the certificate in this case were not available for distribution to Tennessee Valley Marketing's employees until after Mr. McFarland's death, the claim file shows that the defendant's claims examiner advised counsel for the plaintiff, "The beneficiary, or his duly authorized representative, may within sixty (60) days from the date of this letter, appeal this denial by direct written application to the Company requesting a review of the claim." There is no dispute that this letter was received, and no dispute that the plaintiff did not pursue an administrative appeal in this case.

The plaintiff argues that he was excused from the requirement of pursuing such an

---

**9.** This conclusion renders it unnecessary to address the issue raised by the defendant whether the federal common law developed under ERISA includes a doctrine of estoppel.

appeal because it would have been pointless, the claims examiner having already declined to accept the evidence offered to contradict the certifications that Mr. McFarland was a part-time employee at the time of his death. Counsel for the plaintiff shows that he requested the examiner to provide to him copies of documents concerning the defendant's solicitation of the business of underwriting this plan, including copies of any prior policies which the defendant had offered to match at a reduced premium cost, and that the defendant refused to provide any such copies, on the ground that such documents were irrelevant to the plaintiff's claim. The plaintiff argues that this also shows that an administrative appeal would have been futile in this case.

The plaintiff has cited no authority in support of this argued exception to the rule that under ERISA, a benefits claimant must exhaust the process of presenting a claim to the plan administrator or underwriter before coming to court under 29 U.S.C. § 1132(a)(1)(B). Review of a claim by another individual or group of individuals, even on the basis of a closed record, may result in an administrator's or underwriter's reversal of a previous denial. Furthermore, the plaintiff here was not entitled to forgo resort to administrative review simply because the defendant declined to provide him with copies of the documentation requested. The issue for the examiner's consideration was whether the plaintiff's claim was payable under the terms of the plan as written, making the language used in any previous policies and in any solicitation to underwrite the plan irrelevant, at least in the absence of any showing that the plaintiff, the plaintiff's decedent, or the plaintiff's decedent's employer relied on any language in any previous policy or in any such solicitation. Furthermore, it may be assumed that copies of the documentation requested were available from the policyholder, *i.e.*, the Trustees of the National Food Brokers Association Member Group Insurance Trust Fund.

For the reasons stated, the court will deny the plaintiff's motion to dismiss, read as a motion to remand this civil action, and will grant the defendant's motion for summary judgment, and dismiss this civil action.