SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellant,

v.

Robert JOHNSTON and Fiduciary Planning, Incorporated, Defendants–Appellees.

Nos. 96–1716, 96–2273.

United States Court of Appeals, Sixth Circuit.

Argued March 19, 1998.

Decided May 1, 1998.

Susan S. McDonald (argued and briefed), U.S. Securities and Exchange Commission, Washington, DC, Jane E. Jarcho, Securities and Exchange Commission, Chicago, IL, for Plaintiff–Appellant in No. 96–1716.

Susan S. McDonald (argued and briefed), Angel Yang, U.S. Securities and Exchange

Commission, Washington, DC, for Plaintiff–Appellant in No. 96–2273.

Lawrence M. Scott (argued and briefed), Mager, Mercer, Scott & Alber, Troy, MI, for Defendants–Appellees.

Before: MARTIN, Chief Judge and MERRITT and CLAY, Circuit Judges.

## OPINION

BOYCE F. MARTIN, JR., Chief Judge.

This appeal derives from a conflict over a disgorgement order. In 1994 defendant Robert Johnston signed a consent decree regarding his activities in the securities field, but he continues to contest disgorgement of his alleged "ill-gotten" gains. The district court determined that Johnston's assets in a company profit-sharing/pension plan could not be used to satisfy the disgorgement order and that it was without jurisdiction to decide the motion of the Securities and Exchange Commission ("Commission") to vacate under Fed.R.Civ.P. 60(b). *SEC v. Johnston*, 922 F.Supp. 1220 (E.D.Mich.1996). We reverse the district court's decision regarding disgorgement and reinstate the disgorgement order. The district court was, however, correct in determining that it was without jurisdiction to decide the Commission's motion to vacate, and we affirm on that issue.

## I.

When the Commission instituted this action, Robert Johnston was the president, a director, and the owner of Fiduciary Planning, Inc., a financial-services company incorporated in Michigan. Johnston ran afoul of the Commission over his involvement in the sale of Eurobond investment securities. The Eurobond was a bond-based investment marketed by a firm that was purportedly incorporated in Switzerland. From June through December of 1989, Johnston and his company sold $1,423,000 worth of Eurobonds to eigh-

teen people in the United States and earned $96,310 in sales commissions.

On August 23, 1993, the Commission brought a six-count complaint in the Eastern District of Michigan against Johnston for his role in the sale of unregistered securities and asked for a permanent injunction and other equitable relief. Johnston signed consent decrees, personally and on behalf of his company, Fiduciary Planning, Inc., on February 14, 1994, and the district court entered a permanent injunction that enjoined Johnston from breaking securities laws in the future. On August 2, the district court issued an opinion on disgorgement. The district court held that Johnston must disgorge $96,310 in profits but that he was not liable for prejudgment interest. The court entered an amended order of disgorgement on September 26, ordering defendants to disgorge by October 31. On November 7, Johnston made a motion to waive disgorgement based on inability to pay.

Johnston pled poverty, arguing that, as of January 31, 1995, Fiduciary Planning, Inc., had a net worth of negative $370,844. Johnston claimed that his personal net worth was negative $230,136.[1] Johnston listed his two largest assets as $110,000 in the pension plan and $135,000 in an individual retirement account.

On March 29, 1996, the district court issued an opinion granting defendants' motion to waive disgorgement. *Johnston*, 922 F.Supp. at 1220. The order was entered on April 2. On May 23, the Commission moved to vacate the court's decision to waive disgorgement pursuant to Fed.R.Civ.P. 60(b) and sought an emergency asset freeze. The Commission filed a timely notice of appeal on May 30. The district court granted the asset freeze but determined that it was without jurisdiction to decide the Rule 60(b) motion.

The pension plan money is at issue in this case. While Johnston was coaxing investors to invest in Eurobond, he claims he also

---

1. Although it is not germane to this appeal, it is interesting to note that, whereas Johnston claims to be a pauper, his wife Phyllis appears to be quite wealthy. On January 31, 1995, she claimed to have a net worth of $1,495,620. She acquired several assets through the largesse of her husband. In 1989 and 1990, Johnston trans-

ferred his interest in an annuity and a life insurance policy to his wife. Johnston also transferred his joint tenancy interest in a California condominium to his wife in 1990, and she owned their home in Michigan. Johnston claimed that he transferred his property interests to his wife for "estate planning" purposes.

invested $170,000 from his pension plan in Eurobond. Johnston lost this money, but he recovered some of the money through a separate action by the Commission in California against Eurobond. *SEC v. Eurobond Exch. Ltd.*, No. 90–378 DT (C.D. Cal. April 22, 1991). A receiver was appointed in the California case, and the receiver negotiated the return of some of the investors' funds. Johnston's portion of the recovery was roughly $111,000, and the receiver held the money in escrow. On August 19, Johnston and the Commission agreed to have the receiver transfer the money to a trust account administered by Johnston's counsel. On January 27, 1995, the parties agreed to release roughly $14,000 back to Johnston's pension plan. The remaining $96,310 remains in the client trust account, awaiting resolution of this case.

Johnston claims the pension money is immune from disgorgement because it is part of an ERISA-qualified plan. According to Section 8.04 of Fiduciary Planning, Inc.'s, pension plan: "The interest in the trust fund of any member or his beneficiaries shall not be alienable by the member or his beneficiaries, either by assignment or any other method, and shall not be subject to be taken by his creditors by any process whatsoever."

## II.

The Commission raises two main questions on appeal: whether the district court correctly waived disgorgement and whether the district court correctly determined that it did not have jurisdiction to hear the Rule 60(b) motion.

### A. The Disgorgement

■ This Court reviews a district court's decision on disgorgement for abuse of discretion. *SEC v. First Jersey Secs.*, 101 F.3d 1450, 1475 (2d Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 57, 139 L.Ed.2d 21 (1997). Abuse of discretion is "a definite and firm conviction that the trial court committed a clear error of judgment." *Bowling v. Pfizer,* 102 F.3d 777, 780 (6th Cir.1996) (quotation marks and citation omitted), *cert. denied,* —— U.S. ——, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997).

■ The Commission raises several challenges to the district court's decision to grant the motion to waive disgorgement, and one argument is dispositive. According to the Commission: "ERISA does not apply to any plan to the extent it benefits the sole owner of a business and his or her spouse." This argument is based on the Sixth Circuit case of *Fugarino v. Hartford Life & Accident Insurance Co.*, 969 F.2d 178 (6th Cir.1992). According to the *Fugarino* court, "a plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA. Further, an employer cannot ordinarily be an employee or participant under ERISA." *Id.* at 185–86 (internal citation omitted). Johnston admitted in his Answer to the Complaint that he is "the owner" of Fiduciary Planning, Inc., and in 1995 he listed the $110,000 in the pension plan as his asset. Johnston meets the criteria set out in the Code of Federal Regulations for an employer: "An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse, ..." 29 C.F.R. § 2510.3–3(c)(1) (1997). Under 29 U.S.C. § 1103(c)(1) (1986 & Supp.1997), "the assets of a plan shall never inure to the benefit of any employer...." As an employer and beneficiary, Johnston cannot claim that his pension is part of an ERISA plan.

It is true that the plan at issue in *Fugarino* is a welfare plan, as opposed to the pension plan at issue in this case, but the *Fugarino* court referred generically to "a plan" in discussing ERISA qualification. 969 F.2d at 185. The *Fugarino* court also cited 29 C.F.R. § 2510.3–3, which applies to both welfare and pension plans. *Id.* We hold that the principle enunciated in *Fugarino* applies to pension and welfare plans.

Johnston contends that *Fugarino* and 29 C.F.R. § 2510.3–3 simply refer to whether an ERISA plan exists and not whether it is "ERISA qualified." To the extent this argument is even accurate—the *Fugarino* court used the word "qualify" in reference to ERISA plans—it is a distinction without a

difference. 969 F.2d at 185. If an ERISA plan does not exist, the question of ERISA qualification is moot. The pension plan at issue covers only Johnston and perhaps his wife and is therefore not an ERISA plan. Disgorgement of the assets in the pension plan is proper.

■ Disgorgement typically is not used for restitution. "The purpose of disgorgement is to force 'a defendant to give up the amount by which he was unjustly enriched' rather than to compensate the victims of fraud." *SEC v. Blavin,* 760 F.2d 706, 713 (6th Cir.1985) (per curiam) (quoting *SEC v. Commonwealth Chem. Secs., Inc.,* 574 F.2d 90, 102 (2d Cir.1978)). In this case, however, the Commission noted during oral argument that it did intend to return the $96,310 to the Eurobond investors. We agree with the Commission that a return of the $96,310 to the unfortunate Eurobond investors is the best use for the money.

## B. The Rule 60(b) motion

[5] The district court determined that it did not have jurisdiction over the Rule 60(b) motion because the Commission filed a notice of appeal while the motion to vacate was still pending. The timing was as follows: order on disgorgement entered on April 1, 1996; motion to vacate filed on May 24; notice of appeal of order on disgorgement filed on May 30; and opinion and order on motion to vacate entered on September 18. The notice of appeal was, therefore, filed during the pendency of the motion to vacate, and the question to be determined is whether such timing deprives the district court of jurisdiction. "It is well settled that the granting of a motion to set aside a judgment under Rule 60(b)(1) is a matter addressed to the sound discretion of the trial court, and that determination will not be reversed except for abuse of discretion." *In re Salem Mortgage Co.,* 791 F.2d 456, 459 (6th Cir.1986).

The Sixth Circuit answered this question in *Pittock v. Otis Elevator Co.,* 8 F.3d 325 (6th Cir.1993). In *Pittock* this Court determined that the district court did not retain jurisdiction to rule on a Rule 60(b) motion if the notice of appeal was filed before the court decided on the motion. *Id.* at 327. The Court noted that, "[a]s a general rule, a

district court no longer has jurisdiction over an action as soon as a party files a notice of appeal, and at that point the appellate court assumes jurisdiction over the matter." *Id.* The Court also noted that there are exceptions to the general rule because "the district court retains jurisdiction when the appeal is untimely, presents issues that the appellate court had previously decided in the same case, or is from a non-final, non-appealable order." *Id.* None of these exceptions apply to the case at hand.

*Pittock* does not force litigants to make an either/or choice between filing a motion to vacate and a notice of appeal. The Commission would not have lost its right to appeal had it filed a timely Rule 60(b) motion. If a Rule 60(b) motion is served within 10 days of final judgment, the time for appeal is tolled during the pendency of the motion. Fed. R.App. P. 4(a)(4)(F). The Commission could have filed both the motion to vacate and notice of appeal had it done so in the proper sequence.

## III.

The district court's decision regarding the disgorgement order is reversed, and the disgorgement order is hereby reinstated. The district court's decision regarding its jurisdiction to hear the Rule 60(b) motion is affirmed.