Mark P. STANTON, M.D., Plaintiff,

v.

PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation, Doe 1 thorugh Doe 100, inclusive, Defendant.

No. CIV. 98 CV 0764–B (JAH).

United States District Court, S.D. California.

Jan. 15, 1999.

William W. Ravin, Law Officer of William W. Ravin, San Diego, CA, for plaintiff.

Robert Kevin Renner, Barger and Wolen, Irvine, CA, for defendant.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

BREWSTER, Senior District Judge.

### I. Introduction

This Motion for Summary Judgment rests on the assertion that the Plaintiff's

---

state law claims are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Plaintiff's claims—request for declaratory relief, breach of contract, breach of implied covenant of good faith and fair dealing, intentional infliction of emotional distress, invasion of privacy, and fraud—arise out of Defendant's partial denial of benefits under a business income overhead expense (BOE) policy.

## II. Factual Background

Plaintiff Mark P. Stanton is an ophthalmologist. Mark P. Stanton, M.D., Inc. is a California corporation. Dr. Stanton has an employment agreement with Mark P. Stanton, M.D., Inc. The Paul Revere Life Insurance Company is a foreign corporation licensed to do business in the State of California. Dr. Stanton purchased the policy in question through Randall G. Ames, an authorized agent of Paul Revere.

The validity of this policy and its terms are not in dispute. The parties do dispute whether Dr. Stanton is entitled to the full benefits available under the policy. Dr. Stanton asserts he suffered a disabling injury that no longer allows him to perform surgery. According to his understanding with Mr. Ames when he purchased the policy, this disability makes him "totally disabled" and entitles him to the policy's full benefits. Paul Revere maintains Dr. Stanton is not totally disabled. Paul Revere now brings this Motion for Summary Judgment on the grounds that its BOE policy with Dr. Stanton is part of an employee welfare benefit plan established by Dr. Stanton. As such, Paul Revere maintains that Dr. Stanton's common law claims are preempted by ERISA.

The question before this Court is thus (1) whether Dr. Stanton's corporation has established or maintained an employee welfare benefit plan as defined by ERISA and, if so, (2) whether the BOE policy at issue is part of that plan. If the answers

to those questions are both in the affirmative, the question arises whether Dr. Stanton's common law claims are preempted under 29 U.S.C. § 1144(a).

## III. Analysis

### A. Standard of Law

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the Court must examine all the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment must be granted if the party responding to the motion fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The evidence offered need not be in a form admissible at trial to avoid summary judgment. *Id.* at 324, 106 S.Ct. 2548. When the moving party does not bear the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case. *Id.* at 325, 106 S.Ct. 2548.

The Court must determine whether evidence has been presented that would enable a reasonable jury to find for the non-moving party. *Anderson,* 477 U.S. at 249–252, 106 S.Ct. 2505. If the Court finds that no reasonable fact-finder could, considering the evidence presented by the

---

**1.** Defendant has filed evidentiary objections to the Stanton declaration based on relevancy, claims that the statements are misleading,

violative of the best evidence rule, hearsay, and vague and ambiguous. The evidentiary motion is denied.

non-moving party and the inferences therefrom, find in favor of that party, summary judgment is warranted.

## B. ERISA Preemption

Defendant's motion for summary judgment turns wholly on whether or not Dr. Stanton's claims are preempted by ERISA. But that is a secondary question. ERISA will only preempt if two criteria are met: (1) there is a "plan" for the purposes of ERISA, *see, e.g., Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), and (2) that the causes of action "relate to" the "plan," if there is one. Thus, the critical question is whether or not the Paul Revere Business Income Overhead Expense (BOE) policy purchased by Dr. Stanton is part of an ERISA plan. The insurer carries the burden of establishing the existence of an ERISA plan. *See Zavora v. Paul Revere Life Ins. Co.,* 145 F.3d 1118, 1120 n. 2 (9th Cir.1998).

Do the various benefits provided by the Stanton corporation constitute a "plan"? ERISA applies to "any employee benefit plan." 29 U.S.C. § 1003(a). In turn, an "employee benefit plan" is defined, for the purposes of this case, to be "an employee welfare benefit plan" (EWBP). *Id.* at § 1002(3). An ERISA employee welfare benefit plan is:

> any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs . . . .
> 29 U.S.C. § 1002(1).

2. Defendant's argument on this point is explicit in its motion. The Court notes that

Case law has given flesh to this spare definition. In the influential case of *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982), the Eleventh Circuit, sitting en banc, stated: "[A] welfare plan requires (1) a 'plan, fund or program' (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits . . . (5) to participants or their beneficiaries." *See also Scott v. Gulf Oil Corp.,* 754 F.2d 1499 (9th Cir. 1985). The *Donovan* court stated that, while elements (3) through (5) were self-explanatory, the existence of a "plan, fund or program" turned on "the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." 688 F.2d at 1372.

Defendant makes both primary and secondary arguments. First, Defendant asserts that the BOE policy, in light of the other insurance policies of Mark P. Stanton, Inc., is part and parcel of an overall ERISA-qualifying plan. Secondarily, Defendant asserts that the BOE is by itself an ERISA-qualifying plan.[2] The arguments are taken in reverse order.

### a. Does the BOE policy constitute a plan in and of itself?

■ " 'The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person.' " *Harper v. American Chambers Life Ins. Co.,* 898 F.2d 1432, 1433 (9th Cir.1990) (*quoting Kanne v. Connecticut Gen. Life Ins.,* 867 F.2d 489, 492 (9th Cir.1988)); *see also Credit Managers Ass'n v. Kennesaw Life and Acc. Ins. Co.,* 809 F.2d 617, 625 (9th Cir.1987).

■ Plaintiff asserts that he purchased this BOE policy because his ability to conduct a profitable business turned on his physical ability to perform surgery. Defendant decided to back away from this assertion in its reply brief.

Should he suffer a disability grave enough to prevent him from performing surgery, Stanton knew certain expenses —— leases, medical malpractice insurance, medical supplies, salaries, and office equipment— would be ongoing. Two undisputed facts support these assertions. First, Stanton has other personal disability insurance through another insurance company. Second, the BOE policy was only for a two-year period. Common experience adds credibility to these factual assertions. Such an insurance arrangement is not uncommon for a corporation to have for key employees. Finally, on its face, a *"business* income *overhead* policy" has very little to do with employee welfare.

The case cited by Defendant in support of its contention that the BOE is an ERISA plan standing by itself, *Bellisario v. Lone Star Life Ins.*, 871 F.Supp. 374 (C.D.Cal.1994), is unavailing. In *Bellisario,* the company provided both a group medical insurance plan to its employees and the disability policy in question solely to the plaintiff. *Bellisario* held that the company's disability plan, even though provided to only one individual, was an ERISA plan. However, as will be discussed, no such "group medical" plan exists in the instant case. Thus, *Bellisario*'s legal conclusion that the disability policy should be legally grouped together with the ERISA group medical plan to form one overall plan —— a step critical to its holding —— is inapposite. Second, the individual disability policy in *Bellisario* involved a "formal Wage Continuation plan." *Id.* at 375. As stated above, the BOE policy in the instant case was designed to cover the expenses of the business when the revenue generated by its principal earner decreased. Business expenses and wages are two quite separate matters. Likewise, as stated, Plaintiff in the instant case had other disability policies to cover lost wages. Thus, as the BOE was not specifically designed to benefit the employee, but instead to cover the owner should

his only revenue-producing employee be injured, *Bellisario* is inapposite.[3]

Finally, the Court believes there is a genuine issue of material fact as to whether Stanton or his professional corporation paid for the BOE policy. Defendant contends in its motion that "[t]he Corporation has also paid all premiums for the Paul Revere business overhead expense policy." Stanton argues that he paid for the policy, as the cost of the premiums was deducted from his salary. Defendant changes its unequivocal tune in its reply, arguing only that Stanton received benefits if the corporation initially paid the premiums, but no longer asserting that the Corporation paid all the premiums. In light of these contested allegations, and Defendant's switch of position, it appears only that the professional corporation paid the premium at various unascertained times because of accounting failures. Thus, the Court finds that, standing by itself, the Stanton BOE policy is not an employee welfare benefit plan.

Next, the Court notes that 29 C.F.R. § 2510.3–3(c)(1)–(2) may dispose of the issue altogether. This regulation states: "(1) An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse, and (2)[a] partner in a partnership and his or her spouse shall not be deemed to be employees with respect to the partnership." Thus, whether the corporation considers Stanton and/or his wife employees is irrelevant when the implementing regulations define them not to be.

Finally, even if the Court were incorrect in its above analysis, and analyzed the BOE policy as an individual disability policy, albeit in a specialized form, the Court's ultimate conclusion would still stand in light of its finding, *infra,* that no ERISA plan exists.

---

**3.** Defendant requests that the Court take judicial notice of a number of unpublished cases. The Court does so, but finds this cases inapposite for the same reasons *Bellisario* does not apply to the instant matter.

### b. Do the various benefits provided by Stanton's corporation constitute a plan?

■ Movants argue that Stanton's BOE policy is part and parcel of an ERISA plan as evidenced by the various health insurance (including eye care and dental reimbursement), a pension/profit-sharing plan, life insurance, and disability policies provided or maintained by the corporation for its employees.[4] The Court notes that no contention is made that any other insurance other than the alleged health-related provisions covered anyone but Stanton and/or his wife.[5]

The facts and circumstances of this case demonstrate that no ERISA plan exists. The Court recognizes that even small-scale plans can be ERISA-covered plans. Some federal appellate circuits have held that the payment of benefits to a single employee is sufficient enough to create a "plan." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 264 (9th Cir.1991) (while ERISA does not govern a plan whose only fully vested beneficiaries are a company's owners, coverage of even one non-owner employee is sufficient to bring a policy within ERISA's scope). *See also Williams v. Wright*, 927 F.2d 1540 (11th Cir.1991); *Cvelbar v. CBI Illinois Inc.*, 106 F.3d 1368, 1376 (7th Cir. 1997). Moreover, provision of even the most modest benefits can still lead to construction of an ERISA-covered plan. As cited by Movants, some courts have held that providing disability benefits alone can constitute creation of a plan. *Ruble v. UNUM Life Ins. Co. Of America*, 913 F.2d 295, 297 (6th Cir.1990). Moreover, the plan does not have to a formal one. *See, e.g., Carver v. Westinghouse Hanford Co., 951 F.2d 1083, 1086 (9th Cir.1991); Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees*, 974 F.2d 391 (3d Cir.1992) (informal discretionary severance benefits constitute welfare plan).

However, looking to the factors in *Donovan* as guidance, in which the existence of a "plan, fund or program" turned on "the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits," 688 F.2d at 1372, the Court finds no ERISA plan. *See also Carver*, 951 F.2d at 1086. The Court cannot ascertain what, if any, benefits were *intended* under the supposed "plan." Movants have made no showing that there is, or was, a "class" of beneficiaries or that any class was so intended. The Court cannot establish a regular source of financing, nor any procedure for applying for or receiving benefits. Defendant does not point to any regular procedure for applying for and collecting benefits.

While no one factor is determinative, the Court notes that any benefits provided by Stanton's professional corporation were not provided in reference to an ERISA plan.[6] There was no daily or even annual

---

4. Movant states that "[a]dmittedly, Stanton's professional corporation did not provide all forms of these benefits to all employees. But that is not required under ERISA and its case law progeny. All that is required —— in order to delineate what is and what is not part of the ERISA plan —— is to show some type of employer involvement." Movant does not support that last sentence with a cite; nor could they. ERISA's test is not so simple. On a different point, the Court notes that Movant drops its implicit assertion that somehow Stanton's professional corporation's provision of vacation benefits, sick leave, worker compensation coverage, and training funding are part and parcel of the alleged ERISA plan. 29 C.F.R. § 2510.3–1(b) ("Payroll practices") disposes of that assertion.

5. The Court also notes that there is substantial disagreement between the parties as to whether Stanton is actually an employee of his professional corporation. Neither party has provided the Court with evidence to support its conclusions on this point. A genuine issue of material fact remains on this matter.

6. Defendant places great stake on language cited from *Credit Managers Assn. of So. California v. Kennesaw Life and Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987) that "[a]n employer, however, can establish an ERISA plan rather easily." There are two problems with this statement as cited for support in this context. First, *Credit Managers Ass'n* involved claims related to an organization of employers. Second, this language is devoid of factual support. Instead, it is only stated

administration of any plan; there was no publishing of any plan (in fact, Stanton claims that he routinely declared to new employees that no benefits were available); and there was no systematic use or even acknowledgment of any plan's existence. The pleadings indicate that while Stanton did provide health insurance benefits to two individual employees out of the seven employed since 1982, there was a seven to eight-year gap between those two employees' employment. This fact disputes the notion that "group" health benefits were provided. Moreover, Defendant does not contest Stanton's declaration that the employees paid for their own health care because Stanton reduced their wages to offset the costs of the health care. Nor does Defendant contest Stanton's assertion that these self-financed health care benefits were based on special needs of the office, and not out of any intent to establish a plan for all employees.[7]

Defendant also overlooks the focus on purchase of health benefits for a group, or class, of employees contained in ERISA case law. ERISA case law in general

focuses on group-type arrangements, and not an individual policy provision. *See, e.g., Credit Managers,* 809 F.2d at 625: "Even if an employer does no more than arrange for a *group-type* insurance program, it can establish an ERISA plan, unless it is a mere advertiser who makes no contribution on behalf of its employees." (Emphasis added). This case is easily distinguishable from *Credit Managers* in that no "group-type" insurance was provided and Defendant apparently agrees that no contributions were made on behalf of the two employees. For instance, in *Donovan, supra,* 688 F.2d at 1373, the court stated that "the purchase of a *group* policy multiple policies covering *a class of employees* offers substantial evidence that a plan, fund, or program has been established." (Emphasis added). Likewise, in another case relied upon by Defendant, *Randol v. Mid–West Nat. Life Ins. Co. of Tennessee,* 987 F.2d 1547, 1551 (11th Cir. 1993), the Court based its holding in part on the provision of "group" benefits. The *Randol* court based its decision on the legal conclusion that the two employees at issue constituted a "class" of beneficiaries. *Id.* at 1550.[8] Other Ninth Circuit case law

in reference to the court's inability to concur with the district court's finding that no ERISA plan existed as to one of the small trusts involved in the case, and thus concluding that summary judgment was inappropriate. This Court is hesitant to put too much weight on language which has no necessary determinative effect on the outcome of the case in controversy.

7. Defendant asserts that the employer's intent or motivation to establish an ERISA plan is irrelevant as to whether a plan exists or not. Intent is not so irrelevant. First, language in § 1002(1)— "for the purpose of"—clearly uses the language of motivation with regard to ERISA plan creation. This Court is unwilling to ignore statutory language. Second, the cases cited by Defendant to support its proposition either (1) are *not* supportive of Defendant's claims, or (2) do not support the intent-is-irrelevant proposition nearly to the extent of Defendant's desires. *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1503–04 (9th Cir.1985) and *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 105, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) fall into the first category. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 107, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) falls into the latter category. *Scott* makes clear that an

ERISA plan may not exist even if an employer attempted to create such a plan. "[A] mere allegation that an employer or employee organization ultimately decided to provide an employee welfare benefit is not enough to invoke ERISA's coverage. Such an allegation fails to allege the 'establishment of a plan.' Something more is needed." *Id.* at 1504. *Shaw* does state that "[t]he test is not one of the employer's motive ...." 463 U.S. at 107, 103 S.Ct. 2890. However, this statement is made in context of particular benefits that were mandated by state law. Moreover, *Shaw* deals with a section of ERISA—§ 4(b)(3)— that is not at issue here. While it is true that explicit intent is not a prerequisite to the finding of an ERISA plan, that is different from intent being irrelevant altogether. *See, e.g., Carver,* 951 F.2d at 1086.

8. *Randol* also involved a situation in which the employer clearly contributed a portion of the premiums for the employee. As such, the court was able to label the employer's $75 per month contribution as the "source of financing," one of the elements set forth in *Donovan, supra,* as determinative of existence of a plan. No such "source of financing" exists in the instant case.

also accentuates the "group" focus of the benefits provided. *See, e.g., Crull v. GEM Ins. Co.,* 58 F.3d 1386 (1995), *citing Credit Managers Ass'n, supra,* 809 F.2d at 625; *Qualls v. Blue Cross of Cal.,* 22 F.3d 839, 843–44 (9th Cir.1994). Defendant makes no allegation that the policies purchased, by the employees, were anything more than *individual* health policies.

Such analysis pertains to the other alleged benefits. While it is also undisputed that Stanton gave money to one employee to offset dental expenses, that level of informality is below anything cited in the case law. Moreover, Stanton alleges that other employees were not even aware of the availability of this reimbursement. Plaintiff argues that this dental reimbursement was nothing more than a "discretionary bonus." No matter its nomenclature, this Court is unwilling to convert what could amount to a gift into the framework of an ERISA plan.

The closest issue for this Court is Stanton's provision of eye care benefits. It is undisputed that Stanton provides free eye examinations and corrective devices at cost to his employees. There appears to be a substantial question of fact whether the examinations and the glasses should be regarded as a "package," and thus fall under the exception contained in 29 C.F.R. § 2510.1–1(c) ("Sales to employees"). As the Court is unfamiliar with how eye care and glasses are sold in this particular case, or in general, the Court finds that this factual issue remains in dispute. As the BOE itself is only an individual policy, even if it were an ERISA-type benefit, it would not necessarily be covered by ERISA.

Finally, *Donovan* and subsequent Ninth Circuit case law clearly states that the determination of whether or not a plan exists turns on all the benefits provided viewed together, and not on a "single act."

*See, e.g., Donovan,* 688 F.2d at 1373 ("[N]o single act in itself necessarily constitutes the establishment of the plan, fund, or program."); *Peterson v. American Life & Health Ins. Co.,* 48 F.3d 404, 407 (9th Cir.1995).[9]

Defendant places great reliance on *Peterson,* but it is distinguishable from the instant case. First, the question in *Peterson* involved whether a health insurance policy that, at the time of the disputed coverage matter, covered only a partner in the firm was an ERISA plan. The *Peterson* court concluded that "the American policy was just one component of [the firm's] employee benefit program and that the program, taken as a whole, constitutes an ERISA plan." *Id.* at 407. Two factors distinguish *Peterson:* first, the coverage was for a health policy, and not a BOE, and, second, the court implicitly found that the firm's other policies in existence at the time of the disputed coverage were an ERISA plan and that the American policy fit into that overall program. *Peterson* is distinguishable on other grounds as well. The *Peterson* court stated, *"[a]t all times relevant to this action,* Quivira continued to provide insurance to at least one non-partner employee, albeit not under the American policy. Quivira not only paid its partners' and employees' insurance premiums but also played an active role in the administration of the coverage, including choosing the insurance, adding and deleting employees and partners from various policies, contacting insurance companies for employees and partners, and distributing information relevant to the coverage. Moreover, the American policy *originally covered* a non-partner employee in addition to Peterson and his partner." *Id.* at 407–08 (emphasis added). The facts of the instant case, as discussed, are quite different. Stanton did not provide employee coverage "at all times," did not play an

---

9. Defendants contend that *Peterson* and *Bellisario* "hold that, when analyzing ERISA application, the court should not proceed by evaluating the individual parts of an employee welfare benefit plan." This Court does not find that either *Peterson* or *Bellisario* stand for such a proposition. In fact, such a holding would be impossible for some analysis of individual parts must be done.

active role in administration, and Stanton's policy did not originally cover a non-partner employee. Finally, the *Peterson* court stated, "[b]ecause the American policy was purchased by Quivira for the purpose of fulfilling its plan to provide benefits to its employees as well as is partners, the policy is part of an ERISA plan and is governed by ERISA." *Id.* Thus, the intent of the employer was an issue for the *Peterson* court, and provides another ground for distinguishing it from the instant case.

The parties also dispute whether a plan was ever established by the Corporation. Defendant points the Court to the "Medical Expense Reimbursement Plan" contained in Stanton's professional corporation's original articles of incorporation. Stanton counters that this plan was established at a time when the only contemplated employees—if any—were the owner of the corporation and his wife, that it has never been used, and that it was discontinued in 1984. Again, as discussed above, this raises an issue of intent, which the Court finds to be relevant as to the overall determination of whether or not an ERISA plan exists. Furthermore, Defendant's argument raises the question of whether or not a plan established that would be exempt at the time of establishment, and was designed not to cover employees, achieves a new identity if employees are subsequently hired. Likewise, does a plan once established that lapses into non-existence or is never implemented/used in the first place take new life under new circumstances? Or does provision of subsequent benefits establish a wholly different plan? The language of the statute is not particularly helpful on this matter. 29 U.S.C. § 1002(1) reads in the disjunctive and involves one past tense verb and one present tense verb: "was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . ." "Was established" might conceivably imply the definition covers even a plan that is established but lapses into nonexistence. But that would be stretching the terms of the Act. "Is maintained" implies that the plan must be

in current operation. Defendant's argument regarding the alleged "Medical Expense Reimbursement Plan" presumably goes to the "was established" language of the statute. Plaintiff pleads sufficient facts to raise doubt whether a plan was ever established, and, furthermore, the Court is unwilling to address the above-raised questions in the absence of sufficient facts.

### IV. Conclusion

Having reviewed the pleadings, and concluded from the facts viewed in a light favorable to the non-moving party that no ERISA plan necessarily existed, and that the Paul Revere BOE policy was not a part of that plan even if an ERISA plan existed, this Court finds that the Plaintiff's common laws are not preempted under ERISA. Defendant's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.