12   *Agrawal, et al. v. Paul*
*Revere Life Ins. Co.*                No. 98-4260

employees will have a unique advantage: the self-employed individual can pursue a parade of state law claims that are withheld from his employees by preemption.

### III.

In conclusion, we reverse the judgment of the district court regarding Agrawal's state law claims under the business expense policy because this policy is not part of an ERISA plan and, therefore, the claims are not preempted. Furthermore, although Dr. Agrawal's individual policy and the group policy may jointly constitute an ERISA plan, we adhere to precedent and reverse the district court's judgment as to the state law claims under the individual policy because Dr. Agrawal does not have standing to bring an ERISA action.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0062P (6th Cir.)
File Name: 00a0062p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SATENDRA K. AGRAWAL;
SATENDRA K. AGRAWAL,
M.D., INC.,
    *Plaintiffs-Appellants,*    No. 98-4260

    *v.*

PAUL REVERE LIFE
INSURANCE COMPANY,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 97-07575—James G. Carr, District Judge.

Argued: November 2, 1999

Decided and Filed: February 18, 2000

Before: MARTIN, Chief Judge; DAUGHTREY, Circuit
Judge; HILLMAN, District Judge.*

---

*The Honorable Douglas M. Hillman, United States District Judge for the Western District of Michigan, sitting by designation.

———————————

**COUNSEL**

**ARGUED:** William H. Bartle, MURRAY & MURRAY, Sandusky, Ohio, for Appellants. Carl J. Schmidt, WOOD & LAMPING, Cincinnati, Ohio, for Appellee. **ON BRIEF:** William H. Bartle, Margaret M. Murray, W. Patrick Murray, MURRAY & MURRAY, Sandusky, Ohio, for Appellants. Carl J. Schmidt, William C. Price, William R. Ellis, WOOD & LAMPING, Cincinnati, Ohio, for Appellee.

———————————

**OPINION**
———————————

BOYCE F. MARTIN, JR., Chief Judge. Dr. Satendra K. Agrawal and Satendra K. Agrawal, M.D., Inc. appeal the district court's grant of summary judgment in favor of Paul Revere Life Insurance Company. The district court held that the plaintiffs' state law claims arising from multiple disability insurance contracts were preempted by the Employee Retirement Income Security Act and that the plaintiffs had standing to pursue civil remedies under ERISA. For the following reasons, we reverse.

I.

On September 16, 1991, Dr. Satendra K. Agrawal and Satendra K. Agrawal, M.D., Inc. acquired three long-term disability insurance policies from Paul Revere Life Insurance Company. Dr. Agrawal is the sole shareholder of Agrawal, Inc. Dr. Agrawal's occupation is that of a cardiovascular and thoracic surgeon. At the time of coverage, Agrawal, Inc. had at least two employees other than Dr. Agrawal.

Of the three policies purchased, two were individual policies. The first policy was an individual disability policy that listed Dr. Agrawal as both the insured and the owner. It

"under which no employees are participants" and provides this illustration:

> For example, a so-called "Keogh" or "H.R.-10" plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under Title I. However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered under Title I.

29 C.F.R. § 2510.3-3(b). For purposes of the definition of "employee benefit plan" the regulation defines "employee," stating that "[a]n individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse." 29 C.F.R. § 2510.3-3(c)(1).

This limiting definition of employee addresses the threshold issue of whether an ERISA plan exists. It is not consistent with the purpose of ERISA to apply this limiting definition of employee to the statutory definitions of participant and beneficiary. When self-employed individuals are excluded from classification as participant or beneficiary, the self-employed lack standing to enforce their rights under ERISA and can sue under state law theories. ERISA was originally put into place to protect the interests of employees by imposing duties on those who fund and administer the employee benefit plans; with these protections come limitations on employees' rights to recover state law remedies. Although self-employed individuals may not need the protections offered by ERISA, because they are likely to look out for themselves in the administration of the plan, it does not follow that once a self-employed person chooses to participate in an ERISA plan and gain benefits thereunder, she should be free from the limitations imposed upon her employees. Under *Fugarino*, a self-employed individual who participates in a disability plan that covers him and all of his

Because the sole proprietor and his family members were neither participants nor beneficiaries under an ERISA plan, no preemption occurred and they enjoyed the broader relief provided by state tort and contract law. *See id.*

The district court erred in ignoring *Fugarino.* Because Dr. Agrawal is the sole shareholder of Agrawal, Inc., he is neither a participant nor a beneficiary under an ERISA plan. *See id.* As neither a participant nor a beneficiary, Dr. Agrawal is not an ERISA entity; likewise, he does not have standing under the ERISA enforcement mechanisms. *See Smith*, 170 F.3d at 616-17. Because Congress did not intend to create an enforcement mechanism to bind non-ERISA parties, we hold that Dr. Agrawal does not have standing to enforce his rights under ERISA and his state law claims arising under any ERISA plan that may exist are not preempted.

Although the decision in the present case is preordained by the *Fugarino* holding, we note that the reasoning underlying the *Fugarino* decision is not thoroughly consistent with the goals of ERISA. The statutory and regulatory definitions of "employee," "participant," and "beneficiary" cause confusion. The statute defines "employee" as "any individual employed by an employer." 29 U.S.C. § 1002(6). The statute further defines "participant" as "any employee or former employee of an employer . . . , who is or may become eligible to receive a benefit of any type from an employee benefit plan . . .", 29 U.S.C. § 1002(7), and defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan . . . ." 29 U.S.C. § 1002(8). These are the only definitions provided for the terms "participant" and "beneficiary." However, another definition of "employee" exists and creates confusion as to who is an employee and for what purposes.

Section 2510.3-3 of Title 29 of the C.F.R. attempts to clarify the term "employee benefit plan." The regulation states that "employee benefit plan" does not include any plan

also stated that all coverage would be paid for by Dr. Agrawal's employer. The second individual policy was a disability income policy for business overhead expenses. This policy insured Dr. Agrawal, but was owned and paid for by Agrawal, Inc.

The third policy purchased by Agrawal, Inc. was a group disability policy that covered Dr. Agrawal and other employees. Paul Revere canceled this group policy in 1995 because the policy required a minimum of two covered employees and no employees other than Dr. Agrawal were eligible for coverage.

On February 15, 1992, Dr. Agrawal sustained a knee injury while skiing and had to undergo medical treatment. Dr. Agrawal's activities as a surgeon were limited because he was unable to stand through prolonged surgeries. From August 1992 until January 1993, Dr. Agrawal and Agrawal, Inc. received total disability benefits from Paul Revere. Plaintiffs then informed Paul Revere that Dr. Agrawal would return to work on a part-time basis. Paul Revere began to limit payments to residual disability benefits. Paul Revere paid residual disability benefits for a period of more than two years. In January 1996, Paul Revere determined that Dr. Agrawal was no longer residually disabled and discontinued payments under the insurance policies.

On July 14, 1997, Dr. Agrawal and Agrawal, Inc. filed a complaint in Ohio state court based on the two individual policies. Paul Revere properly removed the case to federal court, filed a counterclaim based on the group policy, and later moved for summary judgment. The district court granted Paul Revere's motion for summary judgment on the basis that plaintiffs' state law claims relate to an employee benefit plan and, therefore, are preempted by the Employee Retirement Income Security Act.

## II.

We review the district court's grant of summary judgment *de novo*. *See Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

### ERISA Preemption

The Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*, is the comprehensive federal law governing employee benefits. If an insurance policy is part of an employee welfare benefit plan governed by ERISA, then a plaintiff's state law claims relating to that policy are preempted and federal law applies to determine recovery. *See Thompson v. American Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56-57 (1987)).

In the present case, we must decide whether the three policies sold by Paul Revere to the plaintiffs satisfy the definition of an ERISA plan. The parties agree that the group disability policy was an employee welfare benefit plan under ERISA. The parties, however, dispute whether the business overhead expense policy and Dr. Agrawal's individual policy were ERISA plans.

An "employee welfare benefit plan" is defined as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1). In *Thompson v. American Home Assurance Co.*, 95 F.3d 429 (6th Cir. 1996), we set out a three-step factual analysis for determining whether a benefit plan satisfies the statutory definition. First, we apply the Department of Labor "safe harbor" regulations to determine whether the program is exempt from ERISA.

We are not required, however, to determine whether these two policies constitute an ERISA plan that was established with the intent to provide benefits, because we hold that Dr. Agrawal does not have standing to bring a civil action under ERISA and therefore his claims are not preempted.

### ERISA Standing

Plaintiffs claim their state law claims are not preempted because they do not have standing to sue under the ERISA civil enforcement provisions. Those provisions allow a participant or beneficiary to bring suit to recover benefits due, to enforce or clarify rights under the plan, or to obtain appropriate equitable relief. *See* 29 U.S.C. § 1132(a)(1)-(4). Specifically, Dr. Agrawal asserts that he is neither a participant nor a beneficiary because he is the sole shareholder of Agrawal, Inc.

As a general rule, the absence of a remedy under ERISA does not mean that state-law remedies are preserved. *See Zuniga v. Blue Cross & Blue Shield of Michigan*, 52 F.3d 1395, 1401 (6th Cir. 1995). When Congress has designed a mechanism to enforce rights or duties of ERISA entities, the broad preemption of ERISA will prevent the application of state law. *See Smith v. Provident Bank*, 170 F.3d 609, 616-17 (6th Cir. 1999). However, state law claims involving non-ERISA entities are not preempted. *See id.* at 617.

Because one's status as an ERISA or non-ERISA entity determines whether or not the lack of standing affects preemption, we must first address Dr. Agrawal's contention that he is neither a participant or a beneficiary under ERISA. In light of this Court's decision in *Fugarino v. Hartford Life & Accident Insurance Co.*, 969 F.2d 178 (6th Cir. 1992), we must agree with Dr. Agrawal's assertion. In *Fugarino*, having found an ERISA plan to exist, we held that a sole proprietor could not be a participant under an ERISA plan. *See id.* at 185-86. We further held the sole proprietor's dependent could not be a beneficiary under the plan. *See id.* at 186.

(9th Cir. 1998), a doctor, who was the sole shareholder of his practice, established one pension plan of which he was the sole beneficiary and a separate pension plan for his employees. The Ninth Circuit held the doctor's pension plan was not an ERISA plan and stated that "even if the plans were created simultaneously or shared other common characteristics, they are independent plans under ERISA." *Id.* at 596 n.4.

The Eleventh Circuit has also addressed whether multiple insurance policies constitute an ERISA plan. In *Slamen v. Paul Revere Life Insurance Co.*, 166 F.3d 1102, 1103 (11th Cir. 1999), a dentist established a health plan for himself and the employees of his solely-owned dental practice by purchasing health and life insurance. Four years later, the dentist purchased an individual disability insurance policy from Paul Revere. *See id.* The dentist's professional corporation paid the premiums for all of the insurance policies. *See id.* at 1103-04. The Eleventh Circuit held, in the absence of evidence showing that the two policies were related, the disability policy was not part of an ERISA plan. *See id.* at 1106.

In *Massachusetts Casualty* and *Peterson*, the policies categorized together as an ERISA plan were purchased at the same time in an effort to create a benefit plan for employees. In both cases, all of the covered employees were covered in the same manner: each had an individual policy or all were originally part of a group policy. In contrast, in *Watson* and *Slamen*, the employers established the policies or pension plans at different times and created one plan for the exclusive benefit of the sole owner of the medical practice. The policies in the present case do not fit within either set of cases. Dr. Agrawal and Agrawal, Inc. purchased the policies on the same day. Both the group policy and Dr. Agrawal's individual policy provided disability benefits; however, the individual policy was for the sole benefit of Dr. Agrawal.

*See id.* at 434. Second, we determine if a "plan" existed by inquiring whether "'from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Id.* at 435 (quoting *International Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir. 1991)). Third, we ask whether the employer established or maintained the plan with the intent of providing benefits to its employees. *See id.*

In the present case, the first factor is satisfied. The parties agree that the policies are not exempt from ERISA via the "safe harbor." Two of the policies satisfy the second factor, because the delivery of disability benefits to Agrawal, Inc. employees, as funded by Agrawal, Inc., is evident from the group policy and Dr. Agrawal's individual policy.

The final policy, the business overhead expense policy, fails this second requirement. The policy does not fit neatly into a plan for providing disability benefits to employees. The purpose of the overhead policy was to provide the corporation with monthly operating expenses (i.e. rent, wages, fixed costs) in the event that Dr. Agrawal was disabled. This differs from the goal of the other policies and the nature of the benefits provided through them. In *Stanton v. Paul Revere Life Insurance Co.*, 37 F. Supp. 2d 1159 (S.D. Cal. 1999), the district court examined the exact same business overhead expense policy in a factual setting very similar to the present case. That court concluded that the overhead policy was not an ERISA plan because the policy did not provide employee welfare benefits, 37 F. Supp. 2d at 1161-62:

Plaintiff asserts that he purchased the [business overhead expense] policy because his ability to conduct a profitable business turned on his ability to perform surgery. Should he suffer a disability grave enough to prevent him from performing surgery, [plaintiff] knew certain expenses — leases, medical malpractice insurance, medical supplies, salaries, and office

equipment — would be ongoing. Two undisputed facts support these assertions. First, [plaintiff] has other personal disability insurance through another insurance company. Second, the [business overhead expense] policy was only for a two-year period. Common experience adds credibility to these factual assertions. Such an insurance arrangement is not uncommon for a corporation to have for key employees. Finally, on its face, a "business income overhead policy" has very little to do with employee welfare.

The overhead policy did not provide employees or their beneficiaries with welfare benefits; rather, it provided operating expenses to the corporation. Providing the corporation with funds to pay wages differs from providing income directly to an employee who is unable to work. Accordingly, we hold that the business overhead policy was not part of an ERISA plan.

To determine whether Dr. Agrawal's individual policy is an ERISA plan, we must examine the final *Thompson* factor. In *Thompson*, we did not explain or apply this requirement that the employer established or maintained the plan with the intent of providing benefits to its employees. This factor closely tracks the statutory language of 29 U.S.C. § 1002(1). It requires an initial showing that the employer established a plan meeting the definition of an "employee benefit plan" and a showing that the employer established the plan with the intent of providing welfare benefits to the employees.

An employee benefit plan exists only when employees other than the sole owner of a business are covered under the plan. *See* 29 C.F.R. § 2510.3-3(b)-(c)(1). *See also Fugarino v. Hartford Life & Accident Ins. Co.*, 969 F.2d 178, 185 (6th Cir. 1992). As stated above, the parties do not dispute that the group policy is an employee benefit plan; they do dispute, however, whether Dr. Agrawal's individual policy is an employee benefit plan. Because Dr. Agrawal's individual policy covers only Dr. Agrawal, the sole owner of Agrawal,

Inc., this policy, standing alone, cannot be an ERISA plan. To counter this position, Paul Revere asserts that the plan at issue is broader than the individual disability policy; Paul Revere defines the ERISA plan as an umbrella of disability coverage consisting of all three policies purchased by the plaintiffs.

We must determine what constitutes the "plan" at issue. Because we have eliminated the business overhead expense policy as not providing employee benefits, we shall limit our examination to the group policy and Dr. Agrawal's individual policy. Typically, an ERISA plan is a single benefit plan or insurance policy. The district court correctly stated that courts have recognized that an employee welfare benefit plan may be funded by group or individual policies. We cannot, however, summarily assume the plan encompasses all insurance policies owned by the plaintiffs.

In *Massachusetts Casualty Insurance Co. v. Reynolds*, 113 F.3d 1450, 1453 (6th Cir. 1997), we acknowledged that an ERISA plan can consist of individual disability insurance policies covering each of the employer's employees, rather than a group policy. The Ninth Circuit, in *Peterson v. American Life & Health Insurance Co.*, 48 F.3d 404, 407 (9th Cir. 1995), found that one individual health insurance policy and a group policy together formed an ERISA plan. In *Peterson*, the individual policy was originally purchased as a group policy covering both partners of the business and one employee. *See id.* at 404. When the business changed group insurance carriers, one partner was denied coverage by the new group carrier and maintained individual coverage with the first insurer. *See id.* The Ninth Circuit held that because the individual policy was originally purchased as part of an ERISA plan, the first group policy, it remained a part of that ERISA plan. *See id.* at 408.

The Ninth Circuit, however, recognizes that a non-ERISA plan cannot be altered merely because the employer also sponsors an ERISA plan. In *In re Watson*, 161 F.3d 593, 595