**Satendra K. AGRAWAL, et al., Plaintiffs**

v.

**PAUL REVERE LIFE INS. CO., Defendant**

**No. 3:97CV7575.**

United States District Court, N.D. Iowa, Western Division.

Nov. 19, 2001.

Margaret M. Murray, Steven C. Bechtel, W. Patrick Murray, William H. Bartle, Murray & Murray, Sandusky, OH, for Satendra K. Agrawal, Satendra K. Agrawal, M.D., Inc.

C.J. Schmidt, William R. Ellis, William C. Price, Wood & Lamping, Cincinnati, OH, Bruce P. Batista, Kathryn E. Toth, Vorys, Sater, Seymour & Pease, Cleveland, OH, for Paul Revere Life Insurance Company, Rao Garunda.

## ORDER

CARR, District Judge.

This is a case by an insured, Dr. Satendra K. Agrawal, under a disability insurance policy issued by the defendant Paul Revere Life Insurance Company. After plaintiff had received benefits for a period of time following an knee injury, the defendant terminated further benefits on the basis that, as stated in the applicable policy language, he remained able "to perform one or more of the important duties of [his] occupation."

As a result of an earlier decision in this case by the Sixth Circuit, *Agrawal v. Paul Revere Life Ins. Co.*, 205 F.3d 297 (6th Cir.2000), this is not an ERISA action. It is, rather, a state-law insurance coverage dispute. In addition to the coverage claim, the plaintiff has brought a bad faith action against the defendant.

■ Pending is the defendant's motion for summary judgment as to both claims.

Because material facts about plaintiff's ability to perform the important duties of his occupation are in dispute, the motion shall be denied as to the coverage issue. The motion shall be taken under advisement with regard to the bad faith claim, and further proceedings with regard to that issue shall be stayed pending trial on the coverage claim, which shall be bifurcated for trial from the bad faith claim.

Plaintiff is a cardiovascular and thoracic surgeon who formerly practiced in the Sandusky, Ohio, area. He injured his knee in a skiing accident in 1992. He submitted a claim for benefits under disability policies issued by the defendant.

Defendant began paying benefits as plaintiff was recuperating from his knee injury. At first these benefits were for total disability; on August 6, 1992, defendant notified the plaintiff that it would be paying him residual benefits (i.e., covering the difference between actual earnings while incapacitated and full benefits). Total benefits were continued until January, 1993; plaintiff had been released by his treating physician to return to work on December 29, 1992.

Plaintiff resumed his surgical practice on June 15, 1993. After his return, plaintiff told his treating doctor that he could perform all surgeries except for the "longest cases requiring three to four hours." Defendant continued to pay residual benefits until January, 1996, when it determined that the plaintiff was no longer residually disabled. When his benefits ceased, plaintiff brought this suit. He closed his office and ceased attempting to practice surgery as of December 31, 1997.

■ In support of his contention that he is entitled to benefits, plaintiff submits his own testimony and that of his treating physicians and the report of a putative insurance expert, Wayne Rasmussen.[1]

---

1. Defendant has filed a motion to strike the    Rasmussen report. That motion shall be

Plaintiff states that an important part of his occupation was standing for long periods of time, including in excess of two hours. He notes that surgical logs do not reflect the actual time spent on his feet from beginning to end of an operation. In addition, the extent to which he had to walk and stand before entering the operating room affected his ability to stand during an operation.

Plaintiff also states that his inability to perform longer surgeries reduced the opportunities for performing shorter surgeries, which had represented the majority of his work both before and after his injury. He has terminated his practice due to his inability to perform longer surgeries.

Dr. Felter, plaintiff's treating physician for about a year after his injury, states that, when plaintiff stands, there is bone on bone in his knee as a result of loss of cartilage following his injury. He also testified that "possibly" a person with plaintiff's condition could do surgery for "three or four or five hours", but "they would more than likely be in excruciating pain and discomfort during that whole period of time."

Dr. Wilde, who has been plaintiff's treating physician for the last several years, expressed the opinion that plaintiff would have extreme and serious pain in his left knee when he stands for two or three hours, and that "[p]rolonged standing or walking is going to make that pain increase." According to Dr. Wilde, plaintiff is not "able to do all of his duties as a cardithoracic surgeon" though he could "conduct and office practice and do short procedures . . . or other surgeries where he was able to sit."

Other evidence in the record supports the defendant's contention that the plaintiff is not entitled to benefits. On his release to return to work, the only restriction was on standing for more than three or four hours. The record of plaintiff's surgeries both before and after his injury shows that the great majority were for periods shorter than this limitation. Shortly after he resumed practice, he acknowledged that he was able to perform surgeries of up to two hours.

In light of the foregoing, I conclude that the material facts are in dispute, and can only be resolved by a jury. Most simply put, a jury is needed to determine whether, as a result of the continuing effects of his injury, the plaintiff's income loss results from the continuing effects of his

granted. The report is three and one-half pages long. About a page of the report summarizes what Mr. Rasmussen reviewed and considered and his qualifications and experience. Another page of the report summarizes the pertinent events leading to the litigation. About a page sets forth Mr. Rasmussen's views on coverage: i.e., his interpretation of the policy in light of the facts. The closing paragraph recites Mr. Rasmussen's opinion that defendant handled this claim in bad faith.

Mr. Rasmussen's views on coverage do not depend on any specialized training or expertise and would not assist the trier of fact. They simply rephrase and repeat arguments being made by plaintiff's counsel. I find, further, that, even if admissible, the probative value of his opinion on coverage would be substantially outweighed by the risk of unfair prejudice and misleading of the jurors. The same is true for his conclusory opinion that the defendant acted in bad faith in its investigation and determination to terminate benefits. In addition, that opinion is not supported by an adequate foundation that describes the customary, reasonable standards followed by insurance companies in conducting similar investigations and making similar determinations. Mr. Rasmussen's opinion on the bad faith issue would be of no help to the jury.

In the alternative, defendant's claim that plaintiff failed to comply with Fed. R. 26(a)(2) is well taken. Such failure constitutes an independent basis for excluding the Rasmussen report.

injury because he is unable "to perform one or more of the important duties of [his] occupation." There is sufficient evidence in the record to support a decision either way, and summary judgment is not appropriate on the coverage issue.

■ Despite plaintiff's arguments to the contrary, I believe that bifurcation of the coverage and bad faith issues is appropriate. Though some evidence may overlap, the coverage question focuses on plaintiff's condition and its effects, while the bad faith claim focuses on what the defendant did in assessing the claim for benefits. I prefer to keep the jury focused on one issue at a time. If possible (i.e., if the parties are not inconvenienced and the jurors remain available to do so), the same jury will try the bad faith claim in the event that it resolves the coverage issue in the plaintiff's favor.

It is, therefore,

ORDERED THAT:

1. Defendant's motion for summary judgment be, and the same hereby is denied; and

2. Trial on January 15, 2002, confirmed; issues of coverage and bad faith to be bifurcated; and

3. Defendant's motion in limine re. Rasmussen report granted; plaintiff's motion to strike Price affidavit denied; plaintiff's motion in limine re. reports of Drs. Goldstein and Mitts held in abeyance pending adjudication of coverage issue.

So ordered.